## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |  |
|---|---|---|---|
| JOSE SANTANA ALCARAZ, LUIS HERNANDEZ SILVA, and JOSE AREVALO MENDOZA, | : | | |
| | : | | |
| **Plaintiffs,** | : | | |
| | : | **Civil Action No.** | 2:21-cv-691 |
| **v.** | : | | |
| | : | | |
| SCHMIDT LANDSCAPING, INC., GARY E. SCHMIDT, THERESE SCHMIDT, ALEJANDRO BRAVO CORIA, SR., EVERGREEN NURSERY, LLC, PAUL HAUBER, LANDSCAPING FOR LE$$, LLC, ADAM BEAM, and MICHAEL PANTELY, | : | | |
| **Defendants.** | : | | |

## COMPLAINT

## NATURE OF ACTION

1.      Plaintiffs Jose Santana Alcaraz, Luis Hernandez Silva, and Jose Arevalo Mendoza bring this civil action seeking redress for, inter alia, violations of laws prohibiting forced labor and abuses of the H-2B temporary worker visa program.

2.       Defendants Schmidt Landscaping, Inc., Gary E. Schmidt, Therese Schmidt, Alejandro Bravo, Sr., Evergreen Nursery, LLC, Paul Hauber, Landscaping for Le$$, LLC, Adam Beam, and, upon information and belief, Michael Pantely recruited Plaintiffs from Mexico for employment in Pennsylvania, using promises regarding the terms and conditions of employment

1

to induce Plaintiffs to work for Defendants in the United States through the H-2B temporary worker visa program.

3.     Once Plaintiffs arrived in Pennsylvania, Defendants broke those promises. Defendants forced Plaintiffs to labor long hours, and often failed to compensate them at the promised rate of pay. From the pay Plaintiffs did receive, Defendants made unauthorized deductions. Defendants Gary E. Schmidt and Alejandro Bravo Coria, Sr., compelled Plaintiffs to labor by, inter alia, withholding Plaintiffs' passports and threatening Plaintiffs with deportation, cancellation of their visas, harm to their families, loss of work, and blacklisting.

4.      Defendants Gary E. Schmidt and Alejandro Bravo Coria, Sr. used violence to cause bodily harm to Plaintiffs; among other things, they shocked Plaintiffs with live electrical wires while Plaintiffs slept and drove landscaping machines into Plaintiffs while Plaintiffs worked.

5.     Defendants Gary E. Schmidt and Alejandro Bravo Coria, Sr., further attempted to isolate Plaintiffs by prohibiting them from leaving worksites or their residence on their own, having visitors at their residence, and discussing the conditions of their employment with anyone.

6.     As a result of this campaign of coercion and violence, Plaintiffs believed they had no choice but to continue to labor for Defendants.

7.     Plaintiffs assert claims arising from violations of their rights under the Trafficking Victims Protection Act (18 U.S.C. §§ 1581, et seq.); Fair Labor Standards Act (29 U.S.C. §§ 201 et. seq.); and state statutes and common law.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1337, 18 U.S.C. § 1595(a), and 29 U.S.C. § 216(b).

    a.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since Plaintiffs'

claims arise out of the laws of the United States.

    b.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 since the

construction of the terms of contracts for employment of temporary foreign non-

agricultural workers pursuant to the federal H-2B program arises under the laws of the

United States.

    c.     This Court has jurisdiction pursuant to 28 U.S.C. § 1337 since Plaintiffs'

claims arise out of the laws of the United States regulating commerce.

    d.     This Court has jurisdiction over Plaintiffs' Trafficking Victims Protection

Act claims pursuant to 18 U.S.C. § 1595(a).

    e.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to the

FLSA, which provides that "[a]n action to recover . . . may be maintained . . . in any

Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).

    f.     This Court has supplemental jurisdiction over Plaintiffs' state law and

common law claims under 28 U.S.C. § 1367 because those claims arise out of the same

operative facts as the claims arising under federal law and are so related to those claims

that they "form part of the same case or controversy under Article III of the United States

Constitution." 28 U.S.C. § 1367(a).

9.     Defendants are actively conducting business in the Commonwealth of

Pennsylvania and are therefore subject to this Court's personal jurisdiction.

10.     Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as Defendants' actions and/or omissions took place in Allegheny, Westmoreland and Washington Counties, Pennsylvania, all of which are within the Western District of Pennsylvania.

## PARTIES

### Plaintiffs

11.     Plaintiffs are citizens of Mexico who entered the United States lawfully on H-2B visas to perform landscaping labor.

12.     Plaintiffs are native Spanish speakers. They are not fluent in English.

13.      In each of the years 2011 to 2016 and 2018 to 2020, Plaintiff Luis Hernandez Silva's ("Plaintiff Hernandez") H-2B visa was petitioned for by Defendant Schmidt Landscaping, Inc.

14.     In each of the years 2011 to 2016 and 2018 to 2020, Plaintiff Hernandez worked for Defendant Schmidt Landscaping, Inc. in Western Pennsylvania.

15.     In 2020, Plaintiff Hernandez's H-2B visa was petitioned for by Defendant Landscaping for Le$$, LLC.

16.     In 2020, Plaintiff Hernandez worked for Defendant Schmidt Landscaping, Inc. in Western Pennsylvania.

17.     In 2019, Plaintiff Jose Guadalupe Santana Alcaraz's ("Plaintiff Santana") H-2B visa was petitioned for by Defendant Schmidt Landscaping, Inc.

18.      In 2019, Plaintiff Santana worked for Defendant Schmidt Landscaping, Inc. in Western Pennsylvania.

19.     In 2019, Jose Arevalo Mendoza's ("Plaintiff Arevalo") H-2B visa was petitioned for by Defendant Evergreen Nursery, LLC.

4

20.     In 2019, Plaintiff Arevalo worked for Defendant Schmidt Landscaping, Inc. in Western Pennsylvania.

21.     At all times relevant to this action, Plaintiffs were engaged in commerce, were engaged in the production of goods for commerce, and/or were employed in enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

### Defendants

22.     Defendant Schmidt Landscaping, Inc. ("Defendant Schmidt Landscaping") is a Pennsylvania corporation with its principal office at 1521 Millers Run Road in McDonald, Pennsylvania.

23.     Defendant Schmidt Landscaping is a landscaping company whose primary activities are commercial and residential landscape services.

24.     Defendant Gary E. Schmidt ("Defendant Gary Schmidt") is the principal owner, President, and Treasurer of Defendant Schmidt Landscaping and resides in Pennsylvania.

25.     Defendant Gary Schmidt has the power to hire and fire employees, supervises and controls employee work schedules and conditions of employment, determines the rate and method of payment, and maintains employee records of Defendant Schmidt Landscaping.

26.     Defendant Gary Schmidt is an employer pursuant to 29 U.S.C. § 203(d), 43 P.S. § 260.2a, 43 P.S. § 333.103(g), and regulations promulgated thereunder, and is jointly and severally liable with Defendant Schmidt Landscaping.

27.     Upon information and belief, Defendant Therese Schmidt is a co-owner and the corporate Secretary of Defendant Schmidt Landscaping.

28.     Upon information and belief, Defendant Therese Schmidt is involved in operations of the corporation including but not limited to determining the rate and method of wage payment and maintaining employee records of Defendant Schmidt Landscaping.

29.     Defendant Alejandro Bravo Coria, Sr. ("Defendant Bravo") was an agent, supervisory employee, and representative of Defendant Schmidt Landscaping at all times relevant to this action. Defendant Bravo supervised and controlled Plaintiffs' work schedules and conditions of employment, facilitated wage payment, and maintained employee records of Defendant Schmidt Landscaping.

30.     At all times relevant to this action, Plaintiffs were employees of Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, and Bravo (hereinafter collectively referred to as "Schmidt Defendants") within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Pennsylvania Minimum Wage Act of 1968 ("MWA"), 43 P.S. §§ 333.101-115; and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1-260.12.

31.     Defendant Evergreen Nursery, LLC ("Defendant Evergreen Nursery" or "Defendant Evergreen Nursery d/b/a McMurray Nursery") is a limited liability company with its principal office at 211 Thompsonville Road in McMurray, Pennsylvania.

32.     Defendant Evergreen Nursery has a registered fictitious name of McMurray Nursery and regularly conducts business as McMurray Nursery. Defendant Evergreen Nursery is a full service landscape company with the primary activities of providing commercial and residential landscape services.

33.     Defendant Paul Hauber ("Defendant Hauber") is the owner of Defendant Evergreen Nursery and resides in Pennsylvania.

6

34.     Defendant Landscaping for Le$$, LLC ("Defendant Landscaping for Le$$") is a Pennsylvania limited liability company with its principal office at 101 Sweetbriar Drive in Canonsburg, Pennsylvania.

35.     Defendant Landscaping for Le$$ is a landscape design and maintenance company.

36.     Defendant Adam Beam ("Defendant Beam") is an owner of Defendant Landscaping for Le$$ and resides in Pennsylvania.

37.     Upon information and belief, Defendant Michael Pantely ("Defendant Pantely") is the co-owner of Defendant Landscaping for Le$$ and resides in Pennsylvania.

## STATEMENT OF FACTS

38.     Defendants Schmidt Landscaping, Evergreen Nursery d/b/a McMurray Nursery, and Landscaping for Le$$ (hereinafter collectively referred to as "Entity Defendants") solicited, recruited, and hired Plaintiffs to perform landscaping work in Western Pennsylvania on a seasonal basis through the federal H-2B Temporary Non-Agricultural Worker program.

39.     The H-2B Temporary Non-Agricultural Worker program ("H-2B Program") is a visa program available to U.S. employers seeking to fill temporary, unskilled positions in industries other than agriculture when those employers contend that they cannot find qualified U.S. workers for the positions.

40.     Each year that a U.S. employer utilizes the H-2B program, the employer is required to submit an application for temporary labor certification (Form ETA 9142B) to the United States Department of Labor ("DOL") providing the specific job classification for the position the employer seeks to fill, as well as the duties and hours of labor the foreign worker will be asked to perform.

41.     If that application for labor certification is approved by DOL, the employer may then file an I-129 Petition for a Non-Immigrant Worker with the United States Citizenship and Immigration Services ("USCIS") for authorization to obtain H-2B visas to bring in workers from abroad to work for the petitioning employer only in the specific positions outlined in the approved labor certification.

42.     Where an I-129 Petition has been approved by USCIS, the employer or its foreign labor recruiter agents recruit prospective H-2B workers, or beneficiaries, who are outside of the United States.

43.     Each of the Entity Defendants in this proceeding arranged for visa processing of the beneficiaries of their approved H-2B petitions at the U.S. Consulate in Monterrey, Mexico, at an appointment time arranged by the employer or agent for the employer.

44.     The visa application process requires a valid passport, as well as the payment of a visa fee.

45.     The prospective H-2B worker attends an interview at the U.S. Consulate.

46.     If the application is approved, the Consular officials of the U.S. Department of State issue the H-2B visa to the worker.

47.     During this process, the U.S. Department of State provides the worker with a pamphlet that explains his or her rights as an H-2B worker and employee in the United States. This pamphlet contains information regarding human trafficking and the phone number for the National Human Trafficking Hotline.

48.     After the visa is issued, the worker may then travel to the United States and seek admission into the country pursuant to the H-2B visa at a designated port of entry.

49.     The H-2B visa issued to the worker lists the duration for which the visa is valid and lists the name of the petitioning employer.

50.     Pursuant to the H-2B rules, the exclusive purpose of the worker's stay in the United States is to work for the petitioning employer in the position certified by DOL for the time period authorized by the visa.

**Contract Formation**

51.     In all relevant years, DOL's certification requirements for the H-2B program at 20 C.F.R. Part 655, Subpart A established the minimum contractual terms which were required to be offered by employers to each H-2B worker. Those minimum terms of employment were incorporated into Plaintiffs' contracts of employment each year they were employed by Entity Defendants.

Schmidt Landscaping and Gary Schmidt

52.     Defendant Schmidt Landscaping entered into a separate seasonal contract of employment with individual Plaintiff Hernandez for each and every season from 2011 to 2016 and 2018 to 2019 pursuant to the H-2B Program.

53.     Defendant Schmidt Landscaping entered into a separate seasonal contract of employment with individual Plaintiff Santana for the 2019 season pursuant to the H-2B Program.

54.     Each party's acceptance of these contracts was supported by good and valuable consideration.

55.     In each relevant year, Defendant Schmidt Landscaping submitted an Application for Temporary Employment Certification to DOL using Form ETA-9142B. Appended to and incorporated into the Application in each relevant year was a Job Order for six positions with the

company, and appendices including a required Appendix B that included an Employer

Declaration executed under penalty of perjury by Defendant Gary Schmidt.

56.   The approved Job Orders included, but were not limited to, the following terms

and guarantees:

a.   The period of work, with a beginning and end date;

b.   Anticipated work schedule Monday to Friday, 7:30AM to 4:00PM, or

around 40 hours of work per week;

c.   An hourly wage of no less than the Prevailing Wage Rate for each term of

employment, which was $13.77 per hour in 2019;

d.   A specified rate of overtime pay for each term of employment, which was

$20.66 per hour in 2019;

e.   A weekly payroll period;

f.   Assurance that the employer will reimburse worker, either in advance or

within the first workweek, "for all visa, visa processing, border crossing and other related

fees, including those mandated by the government";

g.   Assurance that the employer would reimburse workers "outside of

reasonable commuting distances" for inbound transportation costs, including meals and

lodging;

h.   Guaranteed employment for a total of work hours equal to at least three-

fourths of the workdays of the total work period advertised in the Job Order; and

i.   Assurance that employer will provide "without charge all tools, supplies,

and equipment necessary to perform duties assigned."

57.     The approved Forms ETA-9142B for the years 2018 and 2019 are attached and fully incorporated into the Complaint as Exhibits A and B.

58.     The minimum contractual terms on which employment was offered in each season by Defendant Schmidt Landscaping were specified by regulations and requirements of DOL including specific assurances on behalf of Defendant Schmidt Landscaping, executed under penalty of perjury by Defendant Gary Schmidt on the annual Form ETA-9142B Appendix B. *See* Exhibit and B. These assurances included, but were not limited to[1]:

7.     During the period of employment that is the subject of this application, the employer will comply with applicable Federal, State, and local employment-related laws and regulations, including, but not limited to, employment-related health and safety laws, 20 C.F.R. part 655, Subpart A, 29 C.F.R. Part 503. In addition, the employer and its agents and attorneys are prohibited from holding or confiscating workers' passports, visas, or other immigration documents pursuant to 18 U.S.C. 1592(a).

9.     The employer and its agents, attorneys, and/or employees have not sought or received, and will not seek to receive, payment of any kind from the worker for any activity related to obtaining certification or employment, including but not limited to payment of the employer's attorney or agent fees, application or petition fees, or recruitment costs. Payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor.

---

[1] The numbering of the assurances included in the Complaint correspond to the numbering found in Form ETA-9142B Appendix B.

13.     The employer will make all deductions from workers' paychecks required by law and only those additional authorized and reasonable deductions disclosed in the job order. Deductions not disclosed will be prohibited.

16.     The employer will keep a record of workers' earnings and provide the workers with the required earnings statements on or before each payday[.]

17.     . . . The employer will either advance all visa, visa-related, border crossing, subsistence, and transportation expenses to workers traveling to the employer's worksite, pay for them directly, or reimburse such expenses, other than travel and subsistence, in the first workweek and reimburse the remainder of the expenses no later than the time workers complete 50 percent of the period covered by the job order . . . .

18.     The employer will provide to workers, without charge or deposit, all tools, supplies, and equipment required to perform the duties assigned.

21.     The employer has not and will not (and has not and will not cause another person to) intimidate, threaten, restrain, coerce, blacklist, discharge or in any other manner discriminate against any person who, with respect to 8 U.S.C. 1164(c), 20 C.F.R. Part 655, Subpart A, 29 C.F.R. Part 503, or any other Department regulation promulgated thereunder; has . . . exercised or asserted on behalf of himself/herself or others any right or protection.

22.     The employer has and will contractually forbid in writing any agent or recruiter (or any employee of such agent or recruiter) whom the employer engages, directly or indirectly, in international recruitment of H-2B

12

workers to seek or receive payments or other compensation from prospective workers . . . .

Evergreen Nursery d/b/a McMurray Nursery and Paul Hauber

59.     Defendant Evergreen Nursery d/b/a McMurray Nursery entered into a separate seasonal contract of employment with individual Plaintiff Arevalo for the 2019 season pursuant to the H-2B Program.

60.     Each party's acceptance of this contract was supported by good and valuable consideration.

61.     In or around January 2019, Defendant Evergreen Nursery submitted an Application for Temporary Employment Certification to DOL using Form ETA-9142B. Appended to and incorporated into the Application was a Job Order for 20 positions with the company for a period between 4/1/2019 and 11/20/2019, and appendices including a required Appendix B that included an Employer Declaration executed under penalty of perjury by Defendant Paul Hauber.

62.     The approved Job Order included, but was not limited to, the following terms and assurances:

a.     A wage rate of no less than $13.77 per hour and an overtime rate of $20.66 per hour;

b.     Work for a total number of work hours equal to at least three-fourths of the workdays in each 12-week period of the total employment period;

c.     Payment in advance or reimbursement in the first workweek for all visa, visa processing, border crossing, and other related fees.

63.     The approved Form ETA-9142B with appended Job Order and Appendix B is attached and fully incorporated into the Complaint as Exhibit C.

64.     The minimum contractual terms on which employment was offered in each season by Defendant Evergreen Nursery were specified by regulations and requirements of DOL including specific assurances on behalf of Defendant Evergreen Nursery by Defendant Hauber on the annual Form ETA-9142B Appendix B. *See* Exhibit C. These assurances included, but were not limited to:

9.     The employer and its agents, attorneys, and/or employees have not sought or received, and will not seek to receive, payment of any kind from the worker for any activity related to obtaining certification or employment, including but not limited to payment of the employer's attorney or agent fees, application or petition fees, or recruitment costs. Payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor.

10.     Upon the separation from employment of any H-2B . . . worker(s) employed under this application, if such separation occurs prior to the end date of the employment specified in this application, the employer will notify the Department in writing of the separation from employment not later than 2 work days after such separation is discovered by the employer.

11.     The employer will not place any H-2B workers employed pursuant to this application outside the area of intended employment or in a job classification not listed on the approved application unless the employer has obtained a new approved Form ETA-9142B.

14

65.    Defendants Evergreen Nursery and Hauber were aware and/or on notice that any employees recruited through the H-2B Program could only work for Defendant Evergreen Nursery in the area of intended employment listed on the approved application.

66.    Defendants Evergreen Nursery and Hauber were aware and/or on notice that Defendant Bravo's solicitation of payment from Plaintiff Arevalo related to employment was not in compliance with H-2B Program requirements. *See* paragraph 157, *infra*.

Landscaping for Le$$, Adam Beam, and Michael Pantely

67.    Defendant Landscaping for Le$$ entered into a contract of employment with individual Plaintiff Hernandez for the 2020 season pursuant to the H-2B Program.

68.    Each party's acceptance of this contract was supported by good and valuable consideration.

69.    In or around January 2020, Defendant Landscaping for Le$$ submitted an Application for Temporary Employment Certification to DOL using Form ETA-9142B. Appended to and incorporated into the Application was a Job Order for 40 positions with the company for a period between 4/1/2020 and 12/1/2020, and appendices including a required Appendix B that included an Employer Declaration executed under penalty of perjury by Defendant Beam.

70.     The approved Job Order included, but was not limited to, the following terms and assurances:

a.    A wage rate of no less than $13.95 per hour and an overtime rate of $20.93 per hour;

b.    40 hours of work per week;

c.      Work for a total number of work hours equal to at least three-fourths of the workdays in each 12-week period of the total employment period;

d.      Payment in advance or reimbursement in the first workweek for all visa, visa processing, border crossing, and other related fees.

71.     The approved Form ETA-9142B with appended Job Order and Appendix B is attached and fully incorporated into the Complaint as Exhibit D.

72.     The minimum contractual terms on which employment was offered in each season by Defendant Landscaping for Le$$ were specified by regulations and requirements of DOL including specific assurances under penalty of perjury by Defendant Beam on Form ETA-9142B Appendix B. *See* Exhibit D. These assurances included, but were not limited to:

10.     Upon the separation from employment of any H-2B . . . worker(s) employed under this application, if such separation occurs prior to the end date of the employment specified in this application, the employer will notify the Department in writing of the separation from employment not later than 2 work days after such separation is discovered by the employer.

11.     The employer will not place any H-2B workers employed pursuant to this application outside the area of intended employment or in a job classification not listed on the approved application unless the employer has obtained a new approved Form ETA-9142B.

73.     Defendants Landscaping for Le$$, Beam and, upon information and belief, Pantely were aware and/or on notice that any employees recruited through the H-2B Program

16

could only work for Defendant Landscaping for Le$$ in the area of intended employment listed on the approved application.

**Entity Defendants' Use of H-2B Program.**

74.     Upon information and belief, Defendant Schmidt Landscaping has utilized the H-2B Program to obtain workers for its landscaping business since 2010 or earlier.

75.     Upon information and belief, Defendant Evergreen Nursery d/b/a McMurray Nursery has utilized the H-2B Program to obtain workers for its landscaping business since 2013 or earlier.

76.     Upon information and belief, Defendant Landscaping for Le$$ has utilized the H-2B Program to obtain workers for its landscaping business since 2019 or earlier.

77.     Upon information and belief, Defendants Beam and Pantely have utilized the H-2B Program to obtain workers for their landscaping businesses, Pantely's Landscaping for Less and/or Landscaping for Less, LLC, and associated fictitiously named companies since 2013 or earlier.

78.     Each Entity Defendant contracted with MAS Labor H2B, LLC, a limited liability company incorporated in Virginia, which acts as the agent and representative for employers in the submission and processing of H-2B applications.

79.     Entity Defendants have engaged in informal sharing of H-2B workers since 2011 or earlier. This venture involves sending H-2B workers from one landscaping business to another, for either single days or the entire season, for the financial benefit of all Entity Defendants.

80.     Such sharing is in violation of the H-2B regulations. The regulations require that an employer disclose in advance the worksites to which an H-2B employer will assign an H-2B

worker. Each additional worksite or job opportunity to which an H-2B employer will assign an H-2B worker is required to be identified on the ETA-9142B or on its attachments. *See* 20 C.F.R. § 655.18(b)(4); 20 C.F.R. § 655.20(x)

81.     Furthermore, the H-2B regulations contain specific requirements for "job contractors," that is, employers who supply H-2B workers to work with another, joint, employer. The job contractor is required to identify the joint employer and submit the application jointly with the joint employer. 20 C.F.R. § 655.19(d)(1).

82.     Pursuant to 20 C.F.R. § 655.19(a), a job contractor may only submit an H-2B Application for Temporary Employment Certification, Form ETA 9142B, if it is filing as a joint employer with its employer-client. That Form ETA-9142B must clearly identify the joint employers and the employment relationship by, inter alia, selecting "Job Contractor – Joint Employer" instead of "Individual Employer" in response to question G.1 on the form.

83.     In each relevant year, each Entity Defendant failed to select "Job Contractor – Joint Employer" and instead affirmatively selected "Individual Employer" in the Forms ETA-9142B submitted to DOL. *See* Exhibits A-D.

84.     In each relevant year each Entity Defendant otherwise failed to meet the regulatory requirements to be considered a job contractor.

85.     The result of this worker-sharing scheme was that, as further discussed below, Plaintiffs were forced to work for a company that was not the employer listed on their H-2B visas, and with which they did not execute a written employment contract.

86.     The work-sharing scheme was not discussed during the recruitment process and was not optional for Plaintiffs, but rather it was mandated by the Entity Defendants.

87.     Such transfers resulted in Plaintiffs Arevalo and Hernandez being sent to labor at Defendant Schmidt Landscaping, where they were subjected to forced labor as outlined below.

88.     Plaintiffs Arevalo and Hernandez would not have accepted the offers of employment had they known they would be sent to labor at Defendant Schmidt Landscaping, given the company's reputation as well as their own experiences.

**Shared Conditions of Workplace Exploitation**

89.     Plaintiffs labored at Defendant Schmidt Landscaping for different periods, but they experienced shared conditions of coercion, exploitation, and intimidation in the workplace.

90.     Plaintiffs were not reimbursed for pre-employment expenses, including visa fees, travel fees, and other costs.

91.     Plaintiffs were not paid the rate promised in their H-2B contracts.

92.     Plaintiffs were not paid for all hours worked.

93.     Plaintiffs were not paid overtime as required by the H-2B job orders.

94.     In fact, although Plaintiffs routinely worked over 70 hours per week, they only received paychecks from Defendant Schmidt Landscaping with wages for approximately 40 hours of work per week.

95.     Occasionally, Plaintiffs received small amounts of additional wages in cash, but these amounts did not compensate them for all the hours they worked nor for the overtime premium promised.

96.     Plaintiffs were often paid later than their regularly scheduled paydays.

97.     Plaintiffs were not provided a record or accounting for the calculation of the payment of wages, withholdings and deductions from pay, or hours worked.

98.     The effect of the late and insufficient payments was that Plaintiffs did not have money for food and other necessities. When Plaintiffs expressed this to Defendant Bravo, he grew angry and yelled at Plaintiffs.

99.     Defendants Bravo and/or Gary Schmidt threatened Plaintiffs by stating that those who did not work hard enough would see a reduction in pay, which would cause the wage rate to fall below the prevailing wage rate in violation of the H-2B job orders and federal regulations.

100.    If Plaintiffs attempted to discuss late or missing payments with Defendants Gary Schmidt and/or Bravo, Defendant Bravo threatened Plaintiffs with deportation and/or threatened to prevent Plaintiffs from receiving another visa in the future.

101.    In fact, Defendant Bravo regularly threatened Plaintiffs with deportation, blacklisting, or physical harm if they did not complete work as quickly as Defendants Bravo and Gary Schmidt expected.

102.    Defendant Bravo also threatened to call immigration authorities on Plaintiffs if they complained about working conditions.

103.    Defendant Bravo threatened Plaintiffs by stating that he knew people in Mexico who could physically harm Plaintiffs and/or their families. Defendant Bravo also made threats to hurt, kidnap, and kill Plaintiffs' family members.

104.    Defendant Bravo and Gary Schmidt also threatened that Plaintiffs would be arrested and/or deported if they tried to leave their employment.

105.    Defendant Bravo and/or Gary Schmidt also threatened Plaintiffs by causing them to believe that those who left their employment would be unable to receive the wages owed to them for work already performed, knowing that Plaintiffs depended on such wages to repay debts and support their families.

106.    Defendants Bravo and Gary Schmidt further engaged in acts of physical violence and intimidation against Plaintiffs.

107.    All Plaintiffs felt they had to continue laboring despite such conditions due to the threats of serious harm and coercive behavior outlined above.

108.    When Plaintiffs ultimately left Schmidt Defendants' employment, they were owed substantial amounts of back wages and had no financial resources to return to their homes hundreds of miles away.

109.    Plaintiffs also experienced abuse during non-work hours, particularly at the hands of Defendant Bravo.

110.    Plaintiffs lived in employer-provided housing with Defendant Bravo. The employer-provided housing was located at 66 Clifford Road, McDonald, PA 15057.

111.    This housing was owned by Defendants Gary Schmidt and Therese Schmidt.

112.    A rental fee for the housing was deducted by Schmidt Defendants from Plaintiffs' pay on a weekly basis.

113.    The specific amount of the rental fee was not disclosed to Plaintiffs in violation of 20 C.F.R. § 655.20(c).

114.    Defendants Bravo and/or Gary Schmidt attempted to isolate Plaintiffs and other workers from anyone outside of Schmidt Landscaping.

115.     Plaintiffs were promised that Defendants Bravo and/or Gary Schmidt would take Plaintiffs to the grocery store to shop once a week, but it often occurred less frequently. Plaintiffs relied on these trips to the grocery store to access food, drinking water, and other necessities.

116.     Plaintiffs were not allowed to have any visitors in the housing. Plaintiffs were told by Defendants Gary Schmidt and/or Bravo that they would call immigration authorities on any guests.

117.     Defendant Bravo generally did not let Plaintiffs inside the housing if he was not present.

118.     Defendant Bravo taunted Plaintiffs and subjected them to humiliating living conditions.

119.     On at least one occasion, Plaintiff Arevalo witnessed Defendant Bravo filming a worker who was using the bathroom and later showing the video to others, laughing and mocking the individual filmed.

### Initial Recruitment of Plaintiff Luis Hernandez Silva

120.     Plaintiff Hernandez was first recruited by Defendant Bravo, acting on behalf of Defendant Schmidt Landscaping, to labor at Schmidt Landscaping in or around the beginning of 2011.

121.     Defendant Bravo, acting on behalf of Defendant Schmidt Landscaping, made promises to Plaintiff Hernandez to pay certain hourly wages and travel expenses, provide housing, and provide other benefits as part of the employment agreement.

122.     Plaintiff Hernandez entered into an H-2B employment contract to work for Defendant Schmidt Landscaping in each of the years 2011, 2012, 2013, 2014, 2015, 2016, 2018, and 2019.

123.     In each year of his employment with Schmidt Defendants, Plaintiff Hernandez went into debt to finance his visa and travel costs.

124.     In each year of his employment with Schmidt Defendants, Schmidt Defendants intentionally broke the promises made to Plaintiff Hernandez during recruitment and in his H-2B contract.

125.     In or around 2013, Schmidt Defendants sent Plaintiff Hernandez to Defendant Evergreen Nursery d/b/a McMurray Nursery to labor.

126.     In each year of his employment with Schmidt Defendants, Plaintiff Hernandez was not reimbursed fully for his pre-employment expenses. He paid or was made to reimburse Defendant Gary Schmidt for travel expenses in each of the relevant years. Schmidt Defendants made deductions from Plaintiff Hernandez's pay for items including, but not limited to, pre-employment expenses, work boots, and tools required for his job. Plaintiff Hernandez did not authorize these deductions in writing.

127.     Defendants Bravo and/or Gary Schmidt continued to tell Plaintiff Hernandez he owed money, and they made deductions from his wages until the end of the season.

128.     Plaintiff Hernandez experienced the labor conditions outlined in paragraphs 89-119, *supra*.

129.     Plaintiff Hernandez was told by Defendant Bravo that the workers were not allowed to leave the premises of the housing on their own for any reason.

130.     Plaintiff Hernandez was told by Defendants Bravo and Gary Schmidt that he would be arrested and/or deported if he tried to leave the worker housing.

131.     In or around 2015, Defendants Bravo and Gary Schmidt took possession of Plaintiff Hernandez's passport. There was no valid reason for the retention of the passport.

132.     The effect of Defendants Bravo and Gary Schmidt's retention of Plaintiff Hernandez's passport was to keep him from leaving Schmidt Defendants' employment.

133.   On another occasion, Plaintiff Hernandez found Defendant Bravo in his room in the worker housing looking for his passport.

134.   On several occasions after returning to Mexico when his H-2B job contract ended, Plaintiff Hernandez was recruited in Mexico by Defendant Bravo with assurances that treatment would improve if he returned to labor for Schmidt Defendants the following season.

135.   Plaintiff Hernandez could not earn sufficient money in Mexico to meet his financial obligations.

136.   Defendants Bravo and Gary Schmidt's treatment of Plaintiff Hernandez became progressively worse each year he returned on an H-2B visa, as discussed below.

### Recruitment and Forced Labor of Plaintiff Jose Santana Alcaraz

137.   Plaintiff Santana was recruited in or around December 2018 by Defendant Bravo, acting on behalf of Defendant Schmidt Landscaping, to labor at Schmidt Landscaping in 2019.

138.   Defendant Bravo, acting on behalf of Defendant Schmidt Landscaping, made promises to pay Plaintiff Santana an hourly wage of $13.50, to reimburse his travel expenses, and to provide housing and other benefits as part of the employment agreement.

139.   With technical support from Defendant Bravo, Plaintiff Santana proceeded to obtain his passport and visa, with the goal of working for Defendant Schmidt Landscaping during the 2019 season.

140.   Plaintiff Santana made direct payments to Defendant Bravo for pre-employment expenses.

141.   Plaintiff Santana went into debt to finance his visa costs and travel to the United States.

142.    Schmidt Defendants unlawfully withheld a week of pay from Plaintiff Santana, stating he would only receive that payment if he completed the full season of employment with Schmidt Defendants.

143.    Plaintiff Santana experienced the labor conditions outlined in paragraphs 89-119, *supra*.

144.    Defendants Bravo and Gary Schmidt also engaged in acts of physical violence and intimidation against Plaintiff Santana.

145.    Defendant Bravo repeatedly used live electric wires to shock Plaintiff Santana while he was resting or sleeping in the employer-provided housing.

146.    Plaintiff Santana was frequently unable to sleep due to his fear that Defendant Bravo would subject him to electric shocks while he was asleep.

147.    Plaintiff Santana expressed a desire to leave Defendant Schmidt Landscaping.

148.    Shortly thereafter, Defendant Bravo took possession of Plaintiff Santana's passport and retained it for approximately five days during the 2019 season. There was no valid reason for this document retention.

149.    The effect of the retention of Plaintiff Santana's passport was to keep him from leaving Schmidt Defendants' employment.

150.    Plaintiff Santana considered attempting to leave many times, but he continued laboring at Defendant Schmidt Landscaping because of the money he was owed by Schmidt Defendants. He also felt compelled to work because of the debt he owed in Mexico and the increasing interest on that loan.

151.    While outside, Defendant Bravo frequently drove a Bobcat machine dangerously close to Plaintiff Santana, making him jump out of the way for his own safety.

152.    On one occasion, Defendant Bravo drove a Bobcat machine into Plaintiff Santana, hitting him in the chest. The collision caused Plaintiff Santana pain in his chest and stomach, which lasted for days.

153.    Given Defendant Bravo's escalating physical violence against him, Plaintiff Santana feared further abuse by Defendants Bravo and Gary Schmidt, and he decided to escape.

154.    Because Plaintiff Santana feared what Defendants Bravo and Gary Schmidt might do to him if they learned of his planned departure, Plaintiff Santana did not attempt to ask them for the significant amount of wages still due to him.

155.    One night, several days after Defendant Bravo hit Plaintiff Santana with the Bobcat, Plaintiff Santana escaped from Schmidt Defendants' property. That night, Plaintiff Santana surreptitiously left the grounds, avoiding detection by Defendants Bravo and Gary Schmidt.

### Recruitment and Forced Labor of Jose Arevalo Mendoza

156.    Plaintiff Arevalo was recruited by Defendant Bravo, acting on behalf of Defendant Evergreen Nursery d/b/a McMurray Nursery, to labor at Defendant Evergreen Nursery in 2018.

157.    Defendant Bravo told Plaintiff Arevalo he could help him get a visa to work in the United States. However, Defendant Bravo charged Plaintiff Arevalo a fee for him to be able to even apply for the visa. Defendant Bravo described this fee as necessary for Plaintiff Arevalo to have a "right" to the visa. Plaintiff Arevalo paid Defendant Bravo thousands of Mexican pesos for this "right."

158.    Plaintiff Arevalo completed the 2018 season with Defendant Evergreen Nursery.

159.    Defendant Bravo, on behalf of Defendant Evergreen Nursery, recruited Plaintiff Arevalo again for work with Defendant Evergreen Nursery in the 2019 season. He promised

Plaintiff Arevalo certain hourly wages and travel expenses, to provide adequate housing, and to provide other benefits as part of the employment agreement.

160.    Plaintiff Arevalo entered into an H-2B employment contract with Defendant Evergreen Nursery for the year 2019.

161.    Plaintiff Arevalo entered the United States with an H-2B visa with Defendant Evergreen Nursery on June 7, 2019.

162.    Upon his arrival in June 2019, Defendant Bravo informed Plaintiff Arevalo that he would actually be working for Defendant Schmidt Landscaping.

163.    Plaintiff Arevalo would not have accepted Defendant Evergreen Nursery's offer of employment if he had known he would in reality be working for Defendant Schmidt Landscaping, as he was aware of the Schmidt Landscaping's negative reputation from hearing other workers' stories when they returned to Mexico.

164.    Plaintiff Arevalo was forced to work for Defendant Schmidt Landscaping, which was not the employer named on his H-2B visa.

165.    Plaintiff Arevalo was not reimbursed fully for his pre-employment expenses. He paid or was made to reimburse Defendant Gary Schmidt for travel expenses.

166.    Plaintiff Arevalo experienced the labor conditions outlined in paragraphs 89-119, *supra*.

167.    Plaintiff Arevalo was told by Defendant Bravo that the workers were not allowed to leave the premises of the housing on their own for any reason.

168.    Plaintiff Arevalo was threatened by Defendants Bravo and Gary Schmidt that he would be arrested and/or deported if he tried to leave the housing.

169.     After receiving his first paycheck and realizing he was being severely underpaid, Plaintiff Arevalo contacted Defendant Hauber, owner of Defendant Evergreen Nursery d/b/a McMurray Nursery, to complain about the wage violations, but Defendant Hauber did nothing to address the issue.

170.     In fact, Plaintiff Arevalo's complaint to Defendant Hauber resulted in severe retaliation by Defendant Bravo, who proceeded to threaten Plaintiff Arevalo with deportation, pay reduction, blacklisting, and physical harm in front of his co-workers. Defendant Bravo instructed Plaintiff Arevalo not to discuss work with anyone outside the company.

171.     Defendant Bravo also taunted and humiliated Plaintiff Arevalo in front of his co-workers while at the worker housing. For example, Defendant Bravo forced Plaintiff Arevalo to go outdoors to relieve himself, even though there was an available bathroom in the housing.

172.     Additionally, Defendant Bravo used live electric wires to shock Plaintiff Arevalo while he was sleeping in the housing.

173.     Plaintiff Arevalo was frequently unable to sleep due to his fear that Defendant Bravo would subject him to electric shocks while he was asleep.

174.     Plaintiff Arevalo also experienced acts of physical violence and intimidation by Defendants Gary Schmidt and Bravo.

175.     Early in his employment, Defendant Gary Schmidt intimidated Plaintiff Arevalo by approaching him and grabbing his buttocks.

176.     On one occasion, Defendant Bravo became angry and threw an iron rod at Plaintiff Arevalo while at a worksite, cutting his finger.

177.     During Plaintiff Arevalo's employment, he observed Defendant Bravo intentionally nearly hit Plaintiff Hernandez with a piece of large machinery.

178.    Plaintiff Arevalo feared that if he left Schmidt Defendants' employment, Defendants Gary Schmidt and Bravo would prevent him from being able to ever return to the United States on a, H-2B visa.

179.    Plaintiff Arevalo also feared for his physical safety upon his return to Mexico, as he had personal knowledge of Defendant Bravo harassing and threatening workers who had returned to Mexico.

180.    However, given the escalating physical violence against him, Plaintiff Arevalo decided to escape. One night, around mid-June 2019, after being threatened and berated by Defendant Bravo in front of co-workers, Plaintiff Arevalo stayed back at the housing while Defendant Bravo took other workers out to buy food.

181.    Plaintiff Arevalo coordinated for a relative to come pick him up that night and help him flee the Schmidt Defendants' grounds.

182.    Plaintiff Arevalo was able to escape, undetected by Defendants Gary Schmidt and Bravo. He only had his first paycheck from Defendant Schmidt Landscaping to support himself.

183.    After he escaped, Plaintiff Arevalo feared for his safety and that of his family in Mexico. He also feared he would be blacklisted and would not be able to obtain another H-2B visa to return to the United States.

### Re-Recruitment and Forced Labor of Plaintiff Luis Alberto Hernandez

184.    Plaintiff Hernandez completed the duration of the 2019 season with Defendant Schmidt Landscaping.

185.    Due to the conditions described above, he did not intend to accept an offer of H-2B employment from Defendant Schmidt Landscaping in subsequent seasons.

186.    In late 2019, Plaintiff Hernandez received a call in Mexico from an agent about a possible H-2B petitioning employer that he understood to be a different company.

29

187.     Upon information and belief, this agent was acting on behalf of Defendant Landscaping for Le$$.

188.     Plaintiff Hernandez worked with the agent to obtain a visa to work for Defendant Landscaping for Le$$ for the 2020 season.

189.     Plaintiff Hernandez entered the United States on April 4, 2020, with an H-2B visa specifying employment with Defendant Landscaping for Le$$.

190.     Plaintiff Hernandez understood that he would be residing in housing provided by Defendant Landscaping for Le$$ in Canonsburg, Pennsylvania.

191.     Upon his arrival in Pennsylvania, Plaintiff Hernandez was picked up at the airport by Defendant Gary Schmidt who informed him that he was giving him a ride to Defendant Landscaping for Le$$.

192.     Defendant Gary Schmidt instead took Plaintiff Hernandez to the worker housing for Defendant Schmidt Landscaping.

193.     After several days, Plaintiff Hernandez realized he would actually be working for Defendant Schmidt Landscaping.

194.     Plaintiff Hernandez would not have accepted the offer of employment from Defendant Landscaping for Le$$'s agent if he had known the employment was with Defendant Schmidt Landscaping, given his past experiences.

195.     Plaintiff Hernandez also experienced the labor conditions outlined paragraphs 89-119, *supra*, during the year 2020.

196.     On or about May 6, 2020, Defendant Gary Schmidt drove an excavator into Plaintiff Hernandez, hitting him in the shoulder and ribs and throwing him to the ground.

197.   Defendant Gary Schmidt did not provide Plaintiff Hernandez with medical assistance.

198.   Plaintiff Hernandez experienced ongoing pain as the result of his injury.

199.   When Plaintiff Hernandez asked Defendant Bravo, in Spanish, to tell Defendant Gary Schmidt, in English, that Plaintiff Hernandez was still experiencing pain several weeks after the injury, Defendants Gary Schmidt and Bravo laughed at Plaintiff Hernandez.

200.   Plaintiff Hernandez became fearful of Defendants Gary Schmidt and Bravo's escalating behavior.

201.   Plaintiff Hernandez believed that if he told Schmidt Defendants he wanted to leave, they would take and retain his passport.

202.   Soon after his injury, Plaintiff Hernandez told an acquaintance about the conditions at Defendant Schmidt Landscaping. Together, they made a plan for Plaintiff Hernandez to escape.

203.   A few weeks after his injury, Plaintiff Hernandez went outside early in the morning and hid in the trees while all the other workers left for the workday. After Defendant Bravo and the other workers had left, the acquaintance picked him up, avoiding detection by Schmidt Defendants.

## CLAIMS FOR RELIEF

**Count I: Trafficking Victims Protection Act –Forced Labor**
**[Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, Alejandro Bravo, Evergreen Nursery, Paul Hauber, Landscaping for Le$$, Adam Beam, Michael Pantely]**

204.   Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

205.     This claim is brought under the Trafficking Victims Protection Act, codified at 18 U.S.C. § 1581, et seq.

206.     Plaintiffs are authorized to bring this civil claim pursuant to the civil remedies provision of 18 U.S.C. § 1595.

207.      Defendants subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589 and/or knowingly benefited from participating in a venture which engaged in the forced labor of Plaintiffs, knowingly or in reckless disregard of the fact that the venture engaged in the obtaining of Plaintiff's forced labor, in violation of 18 U.S.C. § 1589(b).

208.     Although Plaintiffs had employment contracts with different Defendants, namely Schmidt Landscaping, Landscaping for Le$$, and Evergreen Nursery, all Plaintiffs were at some point sent to labor at Defendant Schmidt Landscaping after they arrived in the United States, where they were subjected to forced labor.

209.     Defendants knowingly obtained Plaintiffs' labor or services by means of force and/or threats of force in violation of 18 U.S.C. § 1589(a)(1), and/or Defendants knowingly benefited from participation in a venture which engaged in the forced labor of Plaintiffs by such means in violation of 18 U.S.C. § 1589(b).

210.     Defendants knowingly threatened Plaintiffs with serious harm in order to obtain Plaintiffs' labor or services in violation of 18 U.S.C. § 1589(a)(2) and/or knowingly benefited from participation in a venture which engaged in the forced labor of Plaintiffs by such means in violation of 18 U.S.C. § 1589(b).

211.     Defendants knowingly abused and/or threatened to abuse the law or legal process, including the federal immigration enforcement system and the H-2B visa program, in order to obtain Plaintiffs' labor or services in violation of 18 U.S.C. § 1589(a)(3), and/or Defendants

knowingly benefited from participation in a venture which engaged in the forced labor of Plaintiffs by such means in violation of 18 U.S.C. § 1589(b).

212.    Defendants knowingly coerced Plaintiffs to labor, by means of a scheme, plan, or pattern intended to cause the Plaintiffs to believe that, if they did not perform labor or services, they would suffer serious harm or physical restraint, in violation of 18 U.S.C. § 1589(a)(4), and/or Defendants knowingly benefited from participation in a venture which engaged in the forced labor of Plaintiffs by such means in violation of 18 U.S.C. § 1589(b).

213.    Plaintiffs are entitled to compensatory damages and punitive damages, restitution, and attorneys' fees in an amount to be determined at trial and any other relief deemed appropriate.

### Count II: Trafficking Victims Protection Act – Human Trafficking
### [Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, Alejandro Bravo]

214.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

215.    This claim is brought under the Trafficking Victims Protection Act, codified at 18 U.S.C. § 1581, et seq.

216.    Plaintiffs are authorized to bring this civil claim pursuant to the civil remedies provision of 18 U.S.C. § 1595.

217.    In violation of 18 U.S.C. § 1590, and in addition to the violations of 18 U.S.C. § 1589 set forth above, Defendants knowingly recruited, transported, harbored, provided, and/or obtained Plaintiffs for the purpose of subjecting them to forced labor and involuntary servitude.

218.     Defendants knowingly recruited and obtained Plaintiffs' labor and services and caused them to travel or be transported to Allegheny County, Pennsylvania, for the purpose of subjecting them to forced labor.

219.     Defendants harbored Plaintiffs for the purpose of subjecting them to forced labor by housing them at the worker housing located at 66 Clifford Road, McDonald, PA 15057.

220.     Plaintiffs are entitled to compensatory damages and punitive damages, restitution, and attorneys' fees in an amount to be determined at trial and any other relief deemed appropriate.

### Count III: Trafficking Victims Protection Act – Unlawful Conduct with Respect to Documents [Defendants Schmidt Landscaping, Gary Schmidt, Alejandro Bravo]

221.     Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

222.     This claim is brought under the Trafficking Victims Protection Act, codified at 18 U.S.C. § 1581, et seq.

223.     Plaintiffs are authorized to bring this civil claim pursuant to the civil remedies provision of 18 U.S.C. § 1595.

224.     In violation of 18 U.S.C. § 1592, and in furtherance of the violations of 18 U.S.C. § 1589 and 1590 set forth above, Defendants engaged in unlawful conduct with respect to Plaintiffs' travel documents.

225.     Defendants knowingly concealed and/or possessed Plaintiff Hernandez's and Plaintiff Santana's passports while in the course of violating or with the intent to violate 18 U.S.C. § 1589 and § 1590.

226.     Plaintiffs are entitled to compensatory damages and punitive damages, restitution, and attorneys' fees in an amount to be determined at trial and any other relief deemed appropriate.

**Count IV: Involuntary Labor Servitude, Pennsylvania Act 105, 18 Pa. C.S. § § 3011-3012 [Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, Alejandro Bravo, Evergreen Nursery, Paul Hauber, Landscaping for Le$$, Adam Beam, Michael Pantely]**

227.     Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

228.     This claim is brought under Pennsylvania Act 105, codified at 18 Pa. C. S. §§ 3001-3072.

229.     Plaintiffs are authorized to bring this civil claim pursuant to the civil remedies provision of 18 Pa. C.S. § 3051.

230.     Although Plaintiffs were recruited by and had employment contracts with different Entity Defendants—namely Schmidt Landscaping, Landscaping for Le$$, and Evergreen Nursery—all Plaintiffs were at some point sent to labor at Schmidt Landscaping after they arrived in the United States, where they were subjected to involuntary labor servitude.

231.     Defendants recruited Plaintiffs to the United States knowing, or with reckless disregard to, the fact that Plaintiffs would be subjected to involuntary labor servitude, in violation of 18 Pa. C.S. § 3011.

232.     Defendants knowingly subjected Plaintiffs to labor servitude in violation of 18 Pa. C.S. § 3012 and/or knowingly benefited from such labor servitude under 18 Pa. C.S. § 3011(a)(2), by means of:

     a.     Causing and/or threatening to cause Plaintiffs and/or their family members serious harm;

b.      Abusing and/or threatening to abuse the legal process, including the federal immigration system and the H-2B Program;

c.      Retaining Plaintiffs' real property, specifically their wages, as a means of coercion;

d.       Engaging in unlawful conduct with respect to Plaintiff Santana's and Plaintiff Hernandez's Mexican passports in violation of 18 Pa. C.S. § 3014;

e.      Engaging in fraud, specifically visa fraud. Defendant Schmidt Landscaping fraudulently obtained workers to labor in their service by engaging in unlawful "worker sharing" agreements with Defendants Landscaping for Le$$ and Evergreen Nursery in violation of DOL and DHS regulations; and

f.      Using a scheme, plan or pattern intended to cause Plaintiffs to believe that if they did not perform labor they would suffer serious harm.

233.    Defendants knowingly benefited financially from and received the value of Plaintiffs' trafficking—namely, Plaintiffs' labor and services.

234.    Plaintiffs are entitled under 18 Pa. C.S. § 3051 to actual damages, compensatory damages, and punitive damages in an amount to be determined at trial and any other relief deemed appropriate.

235.    Plaintiffs are entitled under 18 Pa. C.S. § 3051 to treble damages of actual damages because Defendants' acts were willful and malicious.

## Count V: Breach of Contract
### [All Defendants]

236.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

237.    As detailed in preceding paragraphs, Defendants entered into a separate contract with each individual Plaintiff for each and every season that each individual Plaintiff was employed by Defendants pursuant to the H-2B Program. Each party's acceptance of these contracts was supported by good and valuable consideration.

238.    The terms of each of these contracts between Defendants and each individual Plaintiff were specified by the ETA-9142 forms described in paragraphs 52-73, *supra,* which incorporated, explicitly and implicitly, the DOL regulations at 20 C.F.R. § 655 Subpart A.

239.    Plaintiffs fulfilled their contractual obligations for each contract by traveling to the United States in order to labor for Defendants.

### Schmidt Defendants

240.    Schmidt Defendants breached the terms of the annual contracts with Plaintiffs by failing to pay contractually established wages for all work performed by Plaintiffs, including overtime premium compensation.

241.    Schmidt Defendants breached the terms of the annual contracts with Plaintiffs by failing to abide by state and federal employment laws concerning wage rates and pay practices.

242.    Schmidt Defendants breached the terms of the annual contracts with Plaintiffs by holding or confiscating Plaintiffs' passports.

243.    Schmidt Defendants breached the terms of the annual contracts with Plaintiffs by failing to keep and provide workers with the required earnings statements on or before each payday.

244.    Schmidt Defendants breached the terms of the annual contracts with Plaintiffs by making deductions from wages not authorized by law and/or not disclosed in the job order.

245.    Schmidt Defendants breached the terms of the annual contracts with Plaintiffs by charging for tools, supplies and/or equipment required to perform the duties assigned.

246.    Schmidt Defendants breached the terms of the annual contracts with Plaintiffs by failing to advance, pay and/or reimburse all visa, visa-related, border crossing, subsistence, and/or transportation expenses, as alleged above.

247.    Schmidt Defendants breached the terms of the annual contracts by allowing Defendant Bravo to seek and/or receive payments from prospective workers.

248.    Schmidt Defendants breached the terms of the annual contracts by intimidating, threatening, restraining, coercing and otherwise discriminating against Plaintiffs for exercising or asserting their employment rights.

249.    Because of Schmidt Defendants' breach of contract with Plaintiffs, Plaintiffs suffered from a loss of expected wages and income.

250.    Plaintiffs are entitled to monetary damages sufficient to place them in the financial position they would have been in but for Schmidt Defendants' breaches.

**Defendants Evergreen Nursery d/b/ McMurray Nursery and Hauber**

251.    Defendants Evergreen Nursery d/b/a McMurray Nursery and Hauber breached the terms of the contract with Plaintiff Arevalo by placing him outside the area of intended employment when they made him work for Defendant Schmidt Landscaping.

252.    Defendants Evergreen Nursery and Hauber breached the terms of the contract by allowing Defendant Bravo to seek and/or receive payments from prospective workers.

253.    Defendants Evergreen Nursery and Hauber breached the terms of the contract with Plaintiff Arevalo by failing to offer work for a total number of work hours equal to at least three-fourths of the workdays of the total employment period.

38

254.    Defendants Evergreen Nursery and Hauber breached the terms of the contract with Plaintiff Arevalo by failing to pay and/or to ensure that he was paid at the promised wage and overtime rates for all hours worked, and failing to reimburse and/or to ensure that he was reimbursed for pre-employment expenses.

255.    Because of this breach, Plaintiff Arevalo suffered from a loss of expected wages and income.

256.    Because of this breach, Plaintiff Arevalo was subjected to forced labor.

257.    Plaintiff Arevalo is entitled to monetary damages sufficient to place him in the financial position he would have been in but for Defendants Evergreen Nursery and Hauber's breach.

**Defendants Landscaping for Le$$, Beam, and Pantely.**

258.    Defendants Landscaping for Le$$, Beam, and Pantely breached the terms of the contract with Plaintiff Hernandez by placing him outside the area of intended employment when they made him work for Defendant Schmidt Landscaping.

259.    Defendants Landscaping for Le$$, Beam, and Pantely breached the terms of the contract with Plaintiff Hernandez by failing to offer work for a total number of work hours equal to at least three-fourths of the workdays of the total employment period.

260.    Defendants Landscaping for Le$$, Beam, and Pantely breached the terms of the contract with Plaintiff Hernandez by failing to pay and/or ensure he was paid at the promised wage and overtime rates for all hours worked, and failing to reimburse and/or to ensure that he was reimbursed for pre-employment expenses.

261.    Defendants Landscaping for Le$$, Beam, and Pantely breached the terms of the contract with Plaintiff Hernandez by failing to abide by state and federal employment laws concerning wage rates and pay practices.

262.    Because of this breach, Plaintiff Hernandez suffered from a loss of expected wages and income.

263.    Because of this breach, Plaintiff Hernandez was subjected to forced labor.

264.    Plaintiff Hernandez is entitled to monetary damages sufficient to place him in the financial position he would have been in but for Defendants Landscaping for Le$$, Beam, and Pantely's breach.

**Count VI: Fair Labor Standards Act ("FLSA")**
**[Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, Alejandro Bravo]**

265.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

266.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which the employee is employed. See 29 U.S.C. § 207(a)(1).

267.    Defendants are subject to the wage requirements of the FLSA because each is an "employer" under 29 U.S.C. § 203(d).

268.    At all relevant times, each Defendants is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203.

269.    During all relevant times, Plaintiffs are covered employees entitled to the aforementioned protections of the FLSA. See 29 U.S.C. § 203(e).

270.    Plaintiffs are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

271.    Defendants knowingly failed to compensate Plaintiffs at a rate of one and one-half (1 ½) times their regular hourly wage for all hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

272.    Defendants made unlawful deductions from Plaintiffs' wages for tool replacement, boots, and other items as these were benefits which were primarily furnished for the Defendants' own convenience. In some work weeks these unlawful deductions cumulatively brought Plaintiffs' wages below the statutory minimum wage.

273.    Defendants failed to reimburse Plaintiffs within their first week of employment for their plane fare to the United States and the associated visa fees, which were expenses incurred primarily for the benefit of Defendants as employers. Because Defendants failed to do so, Plaintiffs were not paid all wages free and clear during their first week of work, in violation of 29 C.F.R. § 531.35.

274.    Upon information and belief, Defendants also failed to make, keep, and preserve records with respect to Plaintiffs sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

275.    As a result of these violations, Plaintiffs suffered damages.

276.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

277.    Pursuant to 29 U.S.C. § 216(b), employers who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid

wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

278.    Pursuant to the FLSA, Defendants are further liable for the payment of attorneys' fees to Plaintiffs' counsel for pursuit of these claims.

## Count VII: Pennsylvania Minimum Wage Act ("MWA")
**[Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, Alejandro Bravo]**

279.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

280.    Defendants violated the MWA requirement that covered employees be compensated for every hour worked in a workweek and that they receive a minimum wage of not less than the federal minimum wage. 43 P.S. §§ 333.104(a)-(a.1).

281.    Defendants also violated the MWA requirement that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. See 43 P.S. § 333.104(c).

282.    Defendants acted intentionally, willfully, and with reckless disregard of clearly applicable MWA provisions.

283.    As a consequence of the Defendants' violations of their rights under the MWA, Plaintiffs are entitled to their unpaid wages, along with attorneys' fees and costs of the court, pursuant to 43 P.S. § 333.113.

## Count VIII: Pennsylvania Wage Payment and Collection Law ("WPCL")
**[Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, Alejandro Bravo]**

284.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

285.     Defendants violated the WPCL requirement that employers notify employees of the rate of pay at the time of hiring and notify employees of a change in the pay rate prior to the time of the change. 43 P.S. § 260.4.

286.     Defendants violated the WPCL requirement that all wages earned by an employee be timely paid by the employer on a regularly-scheduled payday. 43 P.S. § 260.3(a).

287.     Defendants' deductions from Plaintiffs' wages for items including, but not limited to, travel, pre-employment expenses, equipment, and rent were impermissible deductions under the WPCL at 43 P.S. § 260.3(a), and implementing regulations at 34 Pa. Code § 9.1(11).

288.     Defendants had no good faith reason for withholding any wages owed to Plaintiffs.

289.     The WPCL provides that "[w]here wages remain unpaid for thirty days beyond the regularly scheduled payday, . . . or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest of dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe[e] shall be entitled to claim, in addition [to the wages owed], as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater." 42 P.S. § 260.10.

290.     As a consequence of Defendants' violations of their rights under the WPCL, Plaintiffs are entitled to claim unpaid wages and liquidated damages of $500 per pay period pursuant to 43 P.S. §§ 260.9a-260.10.

**Count IX: Assault and Battery**
**[Defendants Gary Schmidt and Alejandro Bravo]**

291.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

292.    Defendant Gary Schmidt placed Plaintiff Hernandez in reasonable fear of bodily harm via his actions set forth in paragraphs 196-199, *supra*.

293.    Defendant Gary Schmidt placed Plaintiff Arevalo in reasonable fear of bodily harm via his actions set forth in paragraph 175, *supra*.

294.    Defendant Bravo placed Plaintiff Santana in reasonable fear of bodily harm via his actions set forth in paragraphs 145-146, *supra*.

295.    Defendant Bravo placed Plaintiff Santana in reasonable fear of bodily harm via his actions set forth in paragraphs 151-152, *supra*.

296.    Defendant Bravo placed Plaintiff Arevalo in reasonable fear of bodily harm via his actions set forth in paragraphs 172-173, *supra*.

297.    Defendant Gary Schmidt intentionally touched and harmed Plaintiff Hernandez despite knowing that the said touching was unwanted and that it would cause harm, as set forth in paragraphs 196-199, *supra*.

298.    Defendant Bravo intentionally touched and harmed Plaintiff Santana despite knowing that the said touching was unwanted and that it would cause harm, as set forth in paragraphs 145-146, *supra*.

299.    Defendant Bravo intentionally touched and harmed Plaintiff Santana despite knowing that the said touching was unwanted and that it would cause harm, as set forth in paragraphs 151-152, *supra*.

300.    Defendant Bravo intentionally touched and harmed Plaintiff Arevalo despite knowing that the said touching was unwanted and that it would cause harm, as set forth in paragraphs 172-173, *supra*.

301.    As a direct result of Defendants' actions, Plaintiffs suffered physical and psychological injuries.

302.    Defendants are liable to Plaintiffs for damages, including compensatory and punitive damages.

**Count X: Negligent Hiring, Retention and Supervision**
**[Defendants Schmidt Landscaping and Gary Schmidt]**

303.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

304.    Defendants were aware, or should have been aware, that Defendant Bravo was unfit to supervise employees, including Plaintiffs, at Defendant Schmidt Landscaping.

305.    Defendants knew, or should have known, that Defendant Bravo had a propensity for violence.

306.    Defendants knew, or should have known, that employment at Defendant Schmidt Landscaping might create a situation where violence would harm its employees, including Plaintiffs.

307.    The negligence, carelessness, and recklessness of Defendants includes, but is not limited to:

a.    Failing to properly screen their employees who were given supervisory authority;

b.    Failing to maintain proper supervision of their premises and worksites;

c.    Failing to properly train their employees;

d.     Failing to implement a reporting system for harassment and misconduct;

e.     Failing to protect Plaintiffs from the violent and harassing acts of Defendant Bravo, which Defendants knew or should have known were likely to occur at their premises, worksites, and employer-provided housing.

f.     Failing to take corrective action and investigate further in cases of misconduct, assault, and battery at the workplace.

308.    Defendants knew or should have known that their failure to properly screen and/or supervise their employees could result in abuses of power and injuries to Plaintiffs.

309.    Despite their knowledge, Defendants acted with reckless indifference to the safety of others by selecting, hiring, retaining, and failing to supervise Defendant Bravo.

310.    As a direct result of Defendants' negligence, Plaintiffs suffered, and continue to suffer, emotional distress, humiliation, embarrassment, anxiety, and psychological and emotional harm, as well as associated physical symptoms.

311.    All of Plaintiffs' losses and damages are due solely to the negligence of Defendants, without any negligence or want of due care on Plaintiffs' part contributing thereto.

**Count XI: Negligence**
**[Defendant Schmidt Landscaping]**

312.    Defendant Schmidt Landscaping had a duty to ensure its premises were safe for employees.

313.    Defendant Schmidt Landscaping had a duty to make sure Plaintiffs were safe on their properties and premises, including at their daily jobsites.

314.    Defendant Schmidt Landscaping breached its duty of care to Plaintiffs when tortious acts were committed at the workplace by Defendants Gary Schmidt and Bravo against Plaintiffs for purely personal reasons outside the scope of employment.

315.    As a direct and proximate result of Defendants' breach of their duty of care, Plaintiffs suffered damages, including physical and psychological injury.

## Count XII: Unjust Enrichment
**[Defendants Schmidt Landscaping, Gary Schmidt, Therese Schmidt, Alejandro Bravo]**

316.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

317.    By paying Plaintiffs below the required minimum wage and overtime rate required by law and the wage and overtime rate established by contract for all hours worked, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiffs.

318.    Benefits conferred on Defendants by Plaintiffs include, inter alia, their labor, for which Defendants paid a wage lower than that required by law and by contract.

319.    Defendants received this artificially cheap labor from Plaintiffs, and therefore appreciated the benefit.

320.    This enrichment of Defendants was unjust and violates principles of justice, equity and good conscience.

321.    As a consequence of Defendants' unjust enrichment, Plaintiffs are entitled to the disgorgement of funds equal to the difference between the wages paid by Schmidt Defendants and the actual value of their labor at statutorily required minimum wage and overtime rates.

## Count XIII: Fraud
**[Defendants Evergreen Nursery and Landscaping for Le$$]**

322.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

**Evergreen Nursery d/b/a McMurray Nursery**

323.    Defendant Evergreen Nursery d/b/a McMurray Nursery represented to Plaintiff Arevalo that he would be working for Defendant Evergreen Nursery in 2019.

324.    Such representation was false in that Plaintiff Arevalo actually worked for Defendant Schmidt Landscaping in 2019.

325.    Such representation was material in that Plaintiff Arevalo would not have accepted Defendant Evergreen Nursery's offer of employment had he known he would be working for Defendant Schmidt Landscaping.

326.    Such representation was made by Defendant Evergreen Nursery with actual knowledge of its falsity, or in reckless disregard of its truth or falsity, as to the actual intent of Defendant Evergreen Nursery.

327.    Such representation was made by Defendant Evergreen Landscaping with the intent of misleading Plaintiff Arevalo into relying on it.

328.    Plaintiff Arevalo's reliance on the material representation of Defendant Evergreen Landscaping was justifiable, in that, inter alia, Plaintiff Arevalo accepted an offer of employment with Defendant Evergreen Nursery, and Evergreen Nursery was named on his H-2B visa.

329.    As a result of the misrepresentation of Defendant Evergreen Nursery, Plaintiff Arevalo has been damaged.

**Defendant Landscaping for Le$$**

330.    Defendant Landscaping for Le$$ represented to Plaintiff Hernandez that he would be working for Defendant Landscaping for Le$$.

331.    Such representation was false, in that Plaintiff Hernandez actually worked for Defendant Schmidt Landscaping.

332.    Such representation was material in that Plaintiff Hernandez would not have accepted Defendant Landscaping for Le$$'s offer of employment had he known he would be working for Defendant Schmidt Landscaping.

333.    Such representation was made by Defendant Landscaping for Le$$ with actual knowledge of its falsity, or in reckless disregard of its truth or falsity, as to the actual intent of Defendant Landscaping for Le$$.

334.    Such representation was made by Defendant Landscaping for Le$$ with the intent of misleading Plaintiff Hernandez into relying on it.

335.    Plaintiff Hernandez's reliance on the material representation of Defendant Landscaping for Le$$ was justifiable, in that, inter alia, Plaintiff Hernandez accepted an offer of employment with Defendant Landscaping for Le$$, and Landscaping for Le$$ was named on his H-2B visa.

336.    As a result of the misrepresentation of Defendant Landscaping for Le$$, Plaintiff Hernandez has been damaged.

### Prayer for Relief

WHEREFORE, Plaintiffs seek the following relief:

1.  Award Plaintiffs punitive, compensatory and actual damages for violations of the Trafficking Victims Protection Act, 18 U.S.C. § 1595;

2.  Award Plaintiffs treble damages for violations of Pennsylvania Act 105, 18 Pa. C.S. § 3051 in an amount to be determined at trial;

3.  Award Plaintiffs monetary damages for unpaid wages and unpaid overtime in an amount to be determined at trial, plus liquidated damages in an equal amount and interest, as provided by the FLSA, 29 U.S.C. § 216(b);

4. Award damages to Plaintiffs for unpaid overtime wages, in accordance with the MWA, 43 P.S. § 333.113;

5. Award damages to Plaintiffs for actual and statutory liquidated damages in accordance with the WPCL, 43 P.S. §§ 260.9a-260.10;

6. Award damages to Plaintiffs in accordance with their contract law claims;

7. Award damages to Plaintiffs for assault and battery;

8. Award damages to Plaintiffs for negligent hiring/retention;

9. Award damages to Plaintiffs for negligence;

10. Award damages to Plaintiffs for unjust enrichment;

11. Award damages to Plaintiffs for fraud;

12. Enter declaratory judgment that the Defendants intentionally violated the rights of Plaintiffs and others similarly situated as set forth in the preceding paragraphs;

13. Award attorneys' fees and costs to Plaintiffs; and

14. Award such other relief, as this Court deems just and equitable.


Dated: May 24, 2021


Respectfully submitted,

JUSTICE AT WORK

/s Lerae Kroon

Lerae Kroon (PA 325464)
JUSTICE AT WORK
5907 Penn Avenue Suite 320
Pittsburgh, PA 15206
Telephone: (412) 218-6886
Fax: (412) 361-1731
lkroon@justiceatworklegalaid.org

Nina Menniti (PA 326828)
JUSTICE AT WORK
5907 Penn Avenue Suite 320
Pittsburgh, PA 15206
Telephone: (412) 208-6772
Fax: (412) 361-1731
nmenniti@justiceatworklegalaid.org

Mariel Mussack (PA 329155)
JUSTICE AT WORK
990 Spring Garden St.
Philadelphia, PA 19123
Telephone: (215) 733-0878
Fax: (215) 733-0876
mmussack@justiceatworklegalaid.org
**WDPA Admission Pending (Admission Ceremony 6/22/2021)

*Attorneys for Plaintiffs*